UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-23876-Civ-COOKE/TURNOFF

WILLIAM LINDQUIST, *et al.*,

    Plaintiffs
vs.

JIN LINXIAN, *et al.*,

    Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS

THIS CASE is before me on Defendant Elsa Sung's Motion to Dismiss Amended and Consolidated Verified Shareholder Derivative Complaint (ECF No. 26) and Defendant Elsa Sung's Motion to Dismiss for Lack of Standing (ECF No. 37). I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons provided, the Sung's motion on standing grounds is denied and Sung's motion on sufficiency grounds is granted.

### I. Background

Plaintiffs William Lindquist and Derek J. Bruce bring this shareholder derivative action on behalf of Jiangbo Pharmaceuticals, Inc. ("Jiangbo" or the "Company") against the Company's directors and officers for breach of fiduciary duty, corporate waste, gross mismanagement, unjust enrichment, and contribution and indemnification. Jiangbo is a holding company incorporated in Florida, which operates, controls, and owns the pharmaceutical business of Laiyang Jiangbo Pharmaceutical Co., Ltd. ("Laiyang Jiangbo"), which operates in the People's Republic of China. (Am. Consolidated Compl. ("ACC") ¶ 10). Laiyang Jiangbo researches, develops, manufactures, and sells pharmaceutical products and health supplements in China. (*Id*.) Moving Defendant Elsa Sung was Jiangbo's CFO from 2007 until she resigned effective March 31, 2011. (ACC ¶ 17).

Plaintiffs allege that in December 2010 the SEC began a non-public informal investigation

into Jiangbo. (ACC ¶ 29). In February 2011, Jiangbo's Audit Committee began a non-public internal investigation into the issues raised by the SEC. (*Id.*) Two independent members of the Audit Committee, Michael Marks and John Wang, led the internal investigation. (ACC ¶¶ 32-38).

On March 26, 2011, the SEC informed Jiangbo that it had begun a non-public formal investigation. (ACC ¶ 29). On May 27, 2011, the Company disclosed the existence of an SEC investigation through a Form 10-Q/A. (*Id.*) In response, the Audit Committee retained Cadwalader Wickersham & Taft LLP ("Cadwalader"), a law firm, and Ernst & Young (China) Advisory Limited ("E&Y"), an accounting firm, to assist in the investigation. (ACC ¶ 30). On May 31, 2011, NASDAQ halted trading in Jiangbo's stock and eventually delisted it in October 2011. (ACC ¶¶ 31, 45-46).

On June 7, 2011, Jiangbo filed a Form 8-K with the SEC disclosing that Marks and Wang resigned from the Audit Committee. (ACC ¶¶ 32-38). The Form 8-K attached a letter to the Board of Directors on behalf of the Audit Committee, which described the reasons for their resignation (the "Audit Committee Letter" or the "Letter"). (ACC Ex. A, ECF No. 9-1). The Audit Committee Letter provided that Jiangbo's Chairman of the Board and members of his management team "have exhibited repeatedly their unwillingness to cooperate in even the most basic requests from the investigation team, despite numerous and repeated explanations by the Audit Committee and Cadwalader to explain the importance of this investigation and the expectations of the SEC." (*Id.*) It goes on to identify in detail the instances of senior managements' uncooperative responses to the independent internal investigation from April 19 to June 3, 2011, including refusals to provide documents relevant to the financial audit or to allow E&Y to perform a walk-through of the Company. (*See id.*) Marks and Wang concluded:

> The recent and consistent history of the Company's lack of cooperation with respect to the internal investigation is therefore more than likely to continue, and has made it impossible for Cadwalader and E&Y to continue the internal investigation in a credible and appropriate manner. Under such circumstances,

2

> the independent members of the Audit Committee can no longer serve the interests of shareholders by remaining on the Board.

(*Id*.)

The Resignation Letter also provided that

> the manner and timing of the Company's payments to the Audit Committee's advisers (Cadwalader and E&Y) raise additional serious concerns regarding the veracity and correctness of banking information provided by the Company, and regarding the Company's ability and willingness to pay for necessary costs related to the internal investigation.

(*Id*.)  It noted that Jiangbo did not pay Cadwalader and E&Y from the Company's principal operating account, despite providing documentation to the Audit Committee reflecting an adequate cash balance to make the payments.  (*Id*.)  Rather, Jiangbo made payments from a smaller Company account or from personal bank accounts belonging to an individual Jiangbo employee.  (*Id*.)  Jiangbo also made several delayed or partial, piecemeal payments to Cadwalader.  (*Id*.)  Marks and Wang concluded:

> The explanation for the timing and manner of payment is either a troubling indication that the Company does not have free access to its cash balances, or a misleading excuse meant to hide the fact that the Company is unwilling to timely and fully honor its obligations to the Audit Committee.

(*Id*.)  As a result of all of the foregoing, Cadwalader and E&Y withdrew their respective engagements with the Audit Committee's consent, and Marks and Wang resigned.  (*Id*.)

Among the issues subject to the Audit Committee's investigation was a RMB 200 million ($31 million) transfer to Shandong Hilead Biotechnology Co., Ltd. ("Hilead"), an entity controlled by Chairman of the Board Wubo Cao (the "Hilead Transaction").  (ACC ¶ 43).  Plaintiffs allege that from May 17, 2010 to the present, Defendants "approved, acquiesced, and/or recklessly ignored an undisclosed related party transaction between Hilead . . . and the Company on the other hand." (ACC ¶ 47).  Plaintiffs further allege that the Defendants "caused Jiangbo to transfer RMB 200 million . . . to Hilead, and attempted through their action and/or inaction to conceal the true nature

3

of this transfer." (ACC ¶ 48).

On August 2, 2011, Plaintiff Bruce served Jiangbo's registered agent with a written demand that Jiangbo's board of directors commence litigation against certain directors and officers for breaches of fiduciary duty, securities fraud, abuse of control, gross mismanagement, unjust enrichment, and waste of company assets. (ACC ¶¶ 66-67). The Board ignored the demand. (ACC ¶ 70). Plaintiff thereafter filed this action.

Sung moves to dismiss the claims against her pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Sung also argues that Plaintiffs lack standing to assert a derivative action on behalf of an administratively dissolved corporation.

## II. LEGAL STANDARDS

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere conclusory statements "are not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 664. The factual allegations alone must state a facially plausible entitlement to relief. *Id.* The standard of facial plausibility is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). A court's consideration when ruling on a motion to dismiss is limited to the complaint and any incorporated exhibits. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

## III. ANALYSIS

### A. Standing

Sung argues that Plaintiffs, as Jiangbo shareholders, lack standing to maintain this derivative action on the Company's behalf because it was administratively dissolved in January 2012, after

4

this action was filed.  According to Sung, Florida law requires a trustee, who will ensure that the interests of all impacted parties are protected, to bring a derivative action on behalf of a dissolved corporation.  Plaintiffs argue that, while Florida law allows a court to appoint a trustee, it is not required by statute.

A dissolved corporation continues its corporate existence and may carry on business appropriate to wind up and liquidate its affairs, including collecting its assets.  Fla. Stat. § 607.1405(1).  Dissolution does not prevent the corporation from commencing a proceeding in its corporate name nor does it abate or suspend any pending action by or against the corporation. § 607.1405(2).  A Florida circuit court "may" appoint a trustee to act for the dissolved corporation "if any director or officer of the dissolved corporation is unwilling or unable to serve or cannot be located."  § 607.1405(5).

In a shareholder derivative action, the plaintiff stockholder is merely a nominal plaintiff; the corporation is the real party in interest.  *Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983); *accord James Talcott, Inc. v. McDowell*, 148 So. 2d 36, 37 (Fla. Dist. Ct. App. 1962).  Florida courts have permitted shareholder derivative suits brought on behalf of an administratively dissolved corporation.  *See Braun v. Buyers Choice Mortg. Corp. ex rel. McAloon*, 851 So. 2d 199, 203-04 (Fla. Dist. Ct. App. 2003) (reversing dismissal of breach of fiduciary duty claims and noting that "the [dissolved] corporation continues its existence for purposes of winding up and liquidating its business and affairs and that dissolution does not prevent suits by or against the corporation in its corporate name."); *Lortie v. Fortin*, 421 So. 2d 193, 193 (Fla. Dist. Ct. App. 1982).  Although Sung distinguishes these cases on the ground that the plaintiffs were shareholders and also directors of the dissolved corporation, nothing in the opinions or in the statutory language suggests that such a distinction is dispositive.  Although it is clear that a circuit court has discretionary authority to appoint a trustee for a dissolved corporation, nothing in § 607.1405 suggests that shareholders

cannot bring an action on behalf of a dissolved corporation for breach of fiduciary duty. I will not dismiss this action for lack of standing.

### B. Summary of Claims Against Sung

Plaintiffs assert causes of action for breach of fiduciary duty, gross mismanagement (which the parties appear to agree is a claim for gross negligence), corporate waste, and contribution and indemnification against Sung. Plaintiffs summarize their claims by stating that, as a result of Defendants' "deliberate and/or reckless action and/or inaction permitting the Hilead Transaction, causing or permitting the material misrepresentations in the Company's SEC filings, and obstructing or facilitating Individual Defendant Cao's obstruction of the Audit Committee's Investigation" the Defendants breached their fiduciary duties to the Company. (ACC ¶ 62).

"Corporate directors and officers owe a fiduciary obligation to the corporation and its shareholders and must act in good faith and in the best interest of the corporation." *Cohen v. Hattaway*, 595 So. 2d 105, 107 (Fla. Dist. Ct. App. 1992). To state a claim for breach of fiduciary duty in Florida, the plaintiff must show: (i) the existence of a fiduciary duty; (ii) the defendant breached that duty; and (ii) the defendant's breach proximately caused the plaintiff's damages. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Although Plaintiffs state a separate claim for corporate waste, allegations of corporate waste are normally couched in terms of a breach of fiduciary duty. *See Orlinsky v. Patraka*, 971 So. 2d 796, 801-02 (Fla. Dist. Ct. App. 2007) ("A shareholder must file a derivative action for breach of fiduciary duty, claiming . . . corporate waste."); *Garner v. Pearson*, 374 F. Supp. 580, 585 (M.D. Fla. 1973) (allegations of corporate waste "seemingly create a claim for relief . . . for breach of fiduciary duties.").

To state a claim for gross negligence, a plaintiff must establish the elements of a negligence cause of action—defendant owes a duty of care, breach of that duty, injury resulting from the breach, and damages—as well as "facts evincing a reckless, wanton, and willful disregard of these

6

duties." *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080, 2008 WL 926512, at *7 (S.D. Fla. Mar. 31, 2008).

### C. Claims Based on Hilead Transaction

Sung moves to dismiss the claims against her based on the Hilead Transaction on the grounds that Plaintiffs' factual allegations are conclusory, fail to establish she owed a duty at the time of the transaction, and fail to establish she breached any duty.

Plaintiffs allege that Jiangbo was a party to the Hilead Transaction. Although Sung argues that some portions of the Audit Committee Letter seem to indicate the transaction was unrelated to Jiangbo, that is a question of fact not appropriate for resolution at this stage of litigation. The Audit Committee Letter does not conclusively refute Plaintiffs' allegations, and at the motion-to-dismiss stage, I must accept all well-pleaded allegations of fact as true. Plaintiffs' allegations sufficiently place Sung on notice of their claims with respect to the parties to the Hilead Transaction.

Plaintiffs allege that the Hilead Transaction occurred sometime from May 17, 2010 to the present. The June 7, 2011 Audit Committee Letter references the Hilead Transaction, which narrows the time frame to May 17, 2010 to June 7, 2011. Sung resigned as CFO on March 31, 2011. After her resignation, she no longer owed a fiduciary duty to Jiangbo. *See Gregg v. U.S. Indus., Inc.*, 715 F.2d 1522, 1541 (11th Cir. 1983) (individual who was removed as president and chief operating officer and continued as a consultant owed no fiduciary duty to the company); *Renpak, Inc. v. Oppenheimer*, 104 So. 2d 642, 644 (Fla. Dist. Ct. App. 1958) ("After there has been a severance of official relationship, either because of resignation or removal, generally a director or officer occupies no relation to the corporation of trust or confidence and deals with it thereafter like any other stranger . . . .").

The ACC does not establish that the Hilead Transaction occurred before Sung resigned from the Company. It also fails to allege any facts to show that Sung continued to owe any duties to the

Company after her resignation. As a result, the ACC fails to show that Sung owed any duty to the Company at the time of the Hilead Transaction, including a duty to disclose it.

Even if the Hilead Transaction occurred prior to Sung's resignation, Plaintiffs fail to allege facts to establish Sung breached a duty owed to Jiangbo because they do not make individualized allegations about Sung's role in connection with the transaction or her knowledge of the transaction. Plaintiffs lump the defendants together and make general allegations that the Defendants "approved, acquiesced, and/or recklessly ignored" the Hilead Transaction. Plaintiffs do not set forth any individualized allegations of fact regarding Sung's responsibilities over transaction review or approval, or about her knowledge of the Hilead Transaction. *See Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080, 2011 WL 1233126, at *2 (S.D. Fla. Mar. 30, 2011) (finding complaint that lumped defendants together failed to satisfy Rule 8 "due to the lack of specific, individualized allegations" regarding each entity).

Plaintiffs argue that they make sufficient allegations that Sung breached a duty owed to the Company when she certified that the information contained in Jiangbo's Form 10-K fairly represented the Company's financial condition. Plaintiffs contend that this was a material misstatement because the Company did not disclose the Hilead Transaction. The certification is dated September 28, 2010. The ACC does not establish that the Hilead Transaction had occurred at the time. Because the ACC alleges a timeframe of May 17, 2010 to present, the transaction may have occurred after Sung signed the certification; the ACC does not show that she had a duty to disclose the transaction on September 28, 2010. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1206 (11th Cir. 2001) ("A defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose." (internal quotation marks omitted)).

Finally, even if the Hilead Transaction had occurred by September 28, 2010, the ACC does not include any individualized allegations to show that Sung knew or should have known about the

8

transaction or that she knew that any omission would likely result in injury to Plaintiffs. *See Clements v. Deeb*, 88 So. 2d 505, 506 (Fla. 1956) ("[G]ross negligence is that course of conduct which a reasonable and prudent man would know would probably and most likely result in injury to persons or property.").

For the foregoing reasons, Plaintiffs fail to state a claim for breach of fiduciary duty, gross negligence, or corporate waste against Sung based on the Hilead Transaction.

### D. Claims Based on Obstruction of Audit Committee Investigation

Sung moves to dismiss the claims against her based on her alleged obstruction of the Audit Committee's investigation because Plaintiffs fail to establish she owed or breach any duty to Jiangbo. She contends that she resigned before the Audit Committee propounded its first document requests on her, on May 5, 2011, and no longer owed a fiduciary duty to the Company.[1] *See Gregg*, 715 F.2d at 1541; *Renpak*, 104 So. 2d at 644.

Plaintiffs claim Sung obstructed the Audit Committee's investigation by refusing to release the Company's materials in her possession. In support of this claim, Plaintiffs state that by March 26, 2011, the Audit Committee had "requested certain information and materials relating to certain aspects of the Company's public disclosures." (ACC ¶ 29). Plaintiffs also point to the Audit Committee Letter, which states that "the Chairman of the Board of Directors of Jiangbo and members of his management team have exhibited repeatedly their unwillingness to cooperate" with

---

[1] Sung also points to confidentiality provisions in her employment contract to maintain that she was contractually prohibited from releasing any documents to the Audit Committee without the Company's authorization. Plaintiffs point to other provisions of the contract, which indicate that she was contractually obligated to cooperate in internal or SEC investigations. These arguments raise questions of fact with respect to contract interpretation, which is best left for summary judgment, when the Court has a more fully developed record. *See, e.g., Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, No. 10-60170, 2011 WL 6024572, at *8 (S.D. Fla. Dec. 2, 2011) ("A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a the motion to dismiss."); *Moran v. Crystal Beach Capital, LLC*, No. 8:10-1037-T-30AEP, 2011 WL 17637, at *4 (M.D. Fla. Jan. 4, 2011) ("The Court may not engage in contract interpretation at the motion to dismiss stage. These arguments are more appropriate for summary judgment.").

the Audit Committee's requests. (ACC Ex. A).

Plaintiffs do not allege any facts to show that Sung continued to owe any duties to the Company after her resignation, but argue that Sung had a fiduciary duty to voluntarily disclose information to the Audit Committee even before she received a request for documents. Plaintiffs do not cite to any persuasive legal authority that would support the existence of such an obligation under the facts of this case. Further, Plaintiffs allege no facts to support their contention that Sung knew about the subject of the internal investigation or knew what kind of information the Audit Committee was seeking before she received a request for documents. Plaintiffs fail to allege sufficient facts to establish that Sung breached a fiduciary duty to the Company or acted with gross negligence in failing to voluntarily turn over documents.

### E. Claim for Contribution and Indemnification

Because the substantive claims for liability against Sung have been dismissed, the claims for contribution and indemnification must likewise fail. *See, e.g.*, *Armstrong v. Ala. Power Co.*, 667 F.2d 1385, 1388-89 (11th Cir. 1982).

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendant Elsa Sung's Motion to Dismiss Amended and Consolidated Verified Shareholder Derivative Complaint (ECF No. 26) is **GRANTED**; and Defendant Elsa Sung's Motion to Dismiss for Lack of Standing (ECF No. 37) is **DENIED**. Plaintiffs may file an amended complaint within fourteen days of the date of this Order.

**DONE and ORDERED** in chambers at Miami, Florida, this 4TH day of September 2012.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*